IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DIANNE BOILEAU, | ) |
| | ) |
| Plaintiff, | ) No. 3:13-cv-00547 |
| | ) |
| v. | ) Judge Nixon |
| | ) Magistrate Judge Griffin |
| CAPITAL BANK FINANCIAL CORP., | ) JURY DEMAND |
| | ) |
| Defendant. | ) |

## ORDER

Pending before the Court is Defendant Capital Bank Financial Corp.'s ("Capital Bank") Motion for Summary Judgment ("Motion"). (Doc. No. 15.) For the reasons stated below, Defendant's Motion is **GRANTED.** The Clerk of the Court is **DIRECTED** to close the case.

I. BACKGROUND

*A. Facts*[1]

Plaintiff Dianne Boileau was hired as Head Teller of the White House branch of Green Bank on September 7, 2007. Boileau reported to Branch Manager Sherrie Byrd. Under the Family and Medical Leave Act ("FMLA") and Green Bank's policies, qualifying employees are entitled to sixty days of FMLA leave annually. 29 U.S.C. § 2612(a)(1) (2012). Boileau has lupus and was on leave pursuant to the Family and Medical Leave Act ("FMLA") for seventeen days from May 9, 2011, through May 31, 2011. Boileau took additional FMLA leave "on an intermittent basis in June, July and August of 2011." (Doc. No. 27 ¶ 9.) Boileau began a second period of full-time FMLA leave on January 2, 2012. Although she was initially scheduled to return on January 17, 2012, she postponed her return date multiple times: first to January 22,

---

[1] Unless otherwise indicated, all facts are undisputed and drawn from Plaintiff's Response to Defendant's Statement of Undisputed Facts (Doc. No. 27).

1

2012, then to January 29, 2012, then to February 28, 2012, and then to April 2, 2012. On January 18, 2012, Boileau's physician certified that Boileau was incapacitated because of her medical condition, and she was likely to have future episodes of one to seven days' duration every two to four weeks for some period of time. (Doc. No. 15-6 at 71.) On January 27, 2012, Boileau's physician certified that Boileau was incapacitated because of lupus, she will have lupus for the rest of her life, and her condition will require her to take additional medical leave every one to two months for eight to twelve weeks at a time. (*Id.* at 74.)

Capital Bank bought Green Bank in September 2011. The transition from Green Bank to Capital Bank required changes to the White House branch's computer systems and procedures. Boileau disputes whether the branch "struggled to cover Boileau's job responsibilities during her leave while also handling the systems integration," but admits other branch employees worked overtime to help with the conversion during this period. (Doc. No. 27 ¶ 16.) In early March 2012, Byrd contacted Regional Executive Darinda Boyd to request additional staff for the White House branch. Boyd in turn contacted Human Resources to determine the status of Boileau's FMLA leave and learned Boileau had exhausted her FMLA leave for the year. Vice President of Human Resources Carolyn Broyles called Boileau and terminated her employment on March 14, 2012.

In a March 2012 long-term disability application, Boileau indicated she had been unable to work since January 2, 2012, and no accommodation would enable her to work. On April 18, 2012, Boileau's physician wrote Boileau was unable to work from January 2, 2012, through the present. In an email to Broyles on May 2, 2012, Boileau stated she was still unable to work.

B. *Procedural History*

Boileau filed this lawsuit on June 6, 2013. (Doc. No. 1.) Capital Bank filed the instant Motion (Doc. No. 15), a Memorandum in Support (Doc. No. 15-1), a Statement of Undisputed Material Facts (Doc. No. 15-2), and nine supporting exhibits (Doc. Nos. 15-4–15-12) on June 25,

2

2014. Boileau filed a Response to Defendant's Statement of Undisputed Material Facts on October 29, 2014 (Doc. No. 27), and a Response in Opposition to Defendant's Motion on November 28, 2014 (Doc. No. 32), supported by ten exhibits (Doc. Nos. 22-1–22-10). Capital Bank filed a Reply brief on December 8, 2014. (Doc. No. 33.)

## II. Legal Standard

Summary judgment is rendered when "there is no genuine dispute as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The party moving for summary judgment bears the initial burden of showing that there is no material issue in dispute." *Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "Once a moving party has met its burden of production, 'its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Blizzard v. Marion Technical Coll.*, 698 F.3d 275, 282 (6th Cir. 2012) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "A party asserting that a fact cannot be or is genuinely disputed *must support the assertion* by (A) *citing to particular parts of materials in the record* . . . or (B) *showing that the materials cited do not establish the absence or presence of a genuine dispute*." Fed. R. Civ. P. 56(c)(1) (emphasis added). "The district court has no independent obligation to search the record for evidence that would enable a party's claims to survive summary judgment." *Sagan v. Sumner Cnty. Bd. of Educ.*, 501 F. App'x 537, 540 (6th Cir. 2012).

The Court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). "Reviewing the facts in the light most favorable to the nonmoving party, the court must ultimately determine whether the evidence presents a sufficient

3

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Blizzard*, 698 F.3d at 282 (internal citations and quotations omitted).

## III. FMLA CLAIMS

The Family and Medical Leave Act ("FMLA") entitles a qualifying employee to twelve weeks of leave per year if he or she has "a serious health condition that makes the employee unable to perform the functions of [his or her] position." 29 U.S.C. § 2612(a)(1)(D). Under the statute, it is unlawful for an employer "to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided [by the FMLA]," *id.* § 2615(a)(1), or "to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA]," *id.* § 2615(a)(2). As such, two distinct theories of recovery arise from these provisions: (1) the "interference" or "entitlement" theory under § 2615(a)(1), and (2) the "retaliation" or "discrimination" theory under § 2615(a)(2). *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 282 (6th Cir. 2012). Boileau alleges FMLA violations under both theories. The Court evaluates the parties' arguments with respect to each theory in turn.

### A. Interference Claim

Under the FMLA, eligible employees are entitled to medical leave and to reinstatement following the leave. 29 U.S.C. §§ 2612(a)(1), 2614(a)(1). "If an employer interferes with the FMLA-created right to medical leave or to reinstatement following the leave, a violation has occurred." *Arban v. W. Pub. Corp.*, 345 F.3d 390, 401 (6th Cir. 2003). Boileau apparently contends Capital Bank interfered with her right to medical leave by terminating her two weeks before she was to return to work and treating her differently than other employees who took leave. (*See* Doc. No. 32 at 19–22.) Capital Bank contends Boileau's claim is meritless because she was granted all of the leave she requested, she exhausted her twelve weeks' entitlement, and she could not return to work at the end of that period.

4

Typically, FMLA interference claims "are analyzed under the burden-shifting framework announced in *McDonnell Douglas Corp. v. Green*." *Madry v. Gibraltar Nat. Corp.*, 526 F. App'x 593, 595 (6th Cir. 2013) (citing *Donald v. Sybra, Inc.*, 667 F.3d 757, 762–63 (6th Cir. 2012)). However, "employees who remain 'unable to perform an essential function of the position because of a physical or mental condition'" after exhausting their annual twelve-weeks of FMLA leave "'[have] no right to restoration to another position under the FMLA.'" *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 506 (6th Cir. 2006) (quoting 29 C.F.R. § 825.214(b), now at 29 C.F.R. § 825.216(c)). Thus, "an employer does not violate the FMLA when it fires an employee who is indisputably unable to return to work at the conclusion of the 12-week period of statutory leave." *Id.* at 506–07 (citing *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 784–85 (6th Cir. 1998)). Employers can short-circuit the burden-shifting framework and prove their entitlement to summary judgment on FMLA interference claims by showing there is no genuine dispute of material fact that the plaintiff (1) exhausted her FMLA leave, and (2) was unable to return to work at the end of the leave period considering "all of the medical evidence bearing on the employee's ability to timely return, not just the evidence available at the time of the adverse employment action." *Id.* at 512.

As described in Section I.A above, the undisputed evidence shows Boileau was unable to return to work as of May 2, 2012, well after her termination date and the date her leave was exhausted. Although Boileau wrote "Disputed" in response to Capital Bank's allegedly-undisputed claim that Boileau received the full twelve weeks of FMLA leave, her response to this point discusses only the unrelated issues of Green Bank's sick time accrual policies and whether Boileau received a copy of the employee handbook. (Doc. No. 27 ¶ 27.) As Capital Bank points out (*id.*; Doc. No. 15-1 at 12), Boileau admitted that she used at least twelve weeks of FMLA leave before she was terminated (Doc. No. 15-6 at 66). The Court finds Boileau failed

5

to create a genuine dispute of material fact on this issue, thus Capital Bank's Motion as to Boileau's FMLA interference claim is **GRANTED**.

B. *Retaliation Claim*

Boileau also claims that Capital Bank terminated her employment in retaliation for taking FMLA leave. The FMLA prohibits retaliation by forbidding employers from discriminating against or discharging employees for exercising their rights under the FMLA or otherwise "'opposing any practice made unlawful by' the Act." *Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007) (quoting 29 U.S.C. § 2615(a)(2)). Where, as here, the plaintiff states a single-motive claim and presents no direct evidence of discrimination, FMLA retaliation claims are evaluated under the *McDonnell Douglas* burden-shifting framework. *Id.* "[A] plaintiff may make out a prima facie case . . . by showing that (1) she engaged in a statutorily protected activity, (2) she suffered an adverse employment action, and (3) there was a causal connection between the adverse employment action and the protected activity." *Id.* If the plaintiff meets this burden, the burden shifts to the defendant to state a legitimate, nondiscriminatory reason for the challenged employment action. *Id.* If the defendant does so, the burden shifts back to the plaintiff to show that the proffered reason was pretext. *Id.*

For the purposes of this analysis, the Court assumes Boileau has established a prima facie case of discrimination. "[I]n retaliation cases where the medical information known to the employer prior to the termination decision shows that the employee could not return within 12 weeks, . . . employers [may use this fact] as a legitimate, nondiscriminatory reason for discharging the employee." *Edgar*, 443 F.3d at 513–14. At the time of her termination, Capital Bank knew Boileau could not return until April 2, 2012, after she exhausted her FMLA leave. Capital Bank put forth a legitimate, non-discriminatory reason for terminating Boileau.

6

However, Boileau puts forth no evidence of pretext. At the final phase of the burden shifting analysis, a plaintiff can refute a defendant's proffered nondiscriminatory reason for the adverse employment action "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Grace v. USCAR*, 521 F.3d 655, 670 (6th Cir. 2008) (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003)). The only argument regarding pretext this Court can discern in Boileau's brief is that another teller and "Byrd conspired, or at least actively engaged in an effort, to terminate Plaintiff due to her utilization of protected leave under the FMLA." (Doc. No. 32 at 22.) However, this assertion is completely unsupported by citation to the record (*id.* at 19–22), and the parties agree that Boyd made the decision to terminate Boileau's employment, not the other teller and Byrd (*see* Doc. No. 27 ¶ 20). Because Boileau failed to put forth any evidence that Capital Bank's proffered reason for her termination was a pretext for unlawful discrimination, Capital Bank's Motion for Summary Judgment as to Boileau's FMLA retaliation claim is **GRANTED**.

IV. **ADA CLAIMS**

Boileau also contends that Capital Bank failed to offer her a reasonable accommodation for her disability and discriminated against her in violation of the Americans with Disabilities Act ("ADA"). The ADA forbids discrimination against "qualified individual[s] on the basis of disability." 42 U.S.C. § 12112(a). To be qualified under the ADA, the plaintiff must (1) possess the requisite skill, education, experience, and training for the position; and (2) be able to perform the essential job functions, with or without reasonable accommodation. *White v. Interstate Distrib. Co.*, 438 F. App'x 415, 418 (6th Cir. 2011). The parties dispute whether Boileau was able to perform the essential functions of her job with or without reasonable accommodation.

7

Case 3:13-cv-00547   Document 47   Filed 07/01/15   Page 7 of 10 PageID #: 3009

A qualified individual must be able to perform the essential functions, "defined as the 'fundamental job duties,'" of the job. *Id.* (quoting 29 C.F.R. § 1630.2(n)(1)). "An employee who cannot meet the attendance requirements of the job at issue cannot be considered a 'qualified' individual protected by the ADA." *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1047 (6th Cir. 1998) (quoting *Tyndall v. Nat'l Educ. Ctrs. Inc.*, 31 F.3d 209, 213 (4th Cir. 1994)) (holding employee who missed one year of work was not qualified under the ADA). As head teller, Boileau's duties included serving customers as a teller at Capital Bank, as well as supervising and coordinating other workers performing similar tasks. (Doc. No. 15-6 at 24.) Accordingly, Capital Bank contends regular attendance was an essential function of her job. Boileau was absent from work for two and a half consecutive months at the time of her termination, and her physician indicated she would need to take medical leave every one to two months for eight to twelve weeks at a time for the rest of her life. The only contrary evidence cited by Boileau is her deposition testimony that "there's no rhyme or reason to lupus" so the timing of any leave she might need was unknown (*see* Doc. No. 27 ¶ 14 (citing Doc. No. 22-1 at 133)), but she does not challenge her physician's finding that she would need to take extensive time off as a result of her disability or her employer's judgment that regular attendance was necessary to the performance of her duties. Accordingly, Boileau was not otherwise qualified for the position without accommodation because she could not meet its attendance requirement.

Boileau "can still be considered 'otherwise qualified' under the ADA if [she] can perform [her] job's essential functions with 'reasonable accommodations';" however, "[w]hen the employee seeks a reasonable accommodation, [she] must establish that a 'reasonable' accommodation is possible, and bears a traditional burden of proof that she is qualified for the position with such reasonable accommodation." *White*, 438 F. App'x at 418–19 (quoting *Hoskins v. Oakland Cnty. Sheriff's Dept.*, 227 F.3d 719, 728 (6th Cir. 2000)). If a plaintiff puts forth

8

evidence that an accommodation is possible, "the employer bears the burden of proving that the accommodation is unreasonable and imposes an 'undue hardship' on the employer." *Cehrs*, 155 F.3d at 781. Courts consider factors such as the cost of the accommodation, the overall size of the enterprise, and the impact of the accommodation on the operation of the facility. *Id.* "To prove undue hardship, the employer has to show 'both that the hardship caused by the proposed accommodation would be undue in light of the enumerated factors, and that the proposed accommodation is unreasonable and need not be made.'" *Id.* at 782 (quoting *Borkowski v. Valley Cent. School Dist.*, 63 F.3d 131, 139 (2d Cir. 1995)). An accommodation is not reasonable if "the costs of [the accommodation], facially, . . . clearly exceed its benefits." *Id.* at 781 (quoting *Borkowski*, 63 F.3d at 138).

The only accommodation suggested by Boileau is additional leave, which is a possible accommodation. (*See* Doc. No. 32 at 22–23.) However, Boileau has not demonstrated that this accommodation would make her qualified for her position—to the contrary, if granted additional leave, Boileau would continue to be unable to perform the essential functions of her job as described above. Furthermore, Capital Bank has put forth significant evidence that additional leave is an unreasonable accommodation because of the hardship created by Boileau's absence, requiring other employees to work overtime and forcing Byrd to request additional staff for the branch, and so Capital Bank should not be required to make that accommodation. Boileau cites to *Byrne v. Avon Prods., Inc.*, 328 F.3d 379, 381 (7th Cir. 2003), for the proposition that "Time off may be an apt accommodation for intermittent conditions." However, Boileau does not address the *Byrne* court's holding—"Inability to work for a multi-month period removes a person from the class protected by the ADA"—which is precisely the situation in which Boileau finds herself. *Id.* The Court finds Boileau has failed to establish that she is a qualified individual under the ADA. Accordingly, summary judgment is **GRANTED** on Boileau's ADA claims.

9

## V. CONCLUSION

For the above-stated reasons, the Court **GRANTS** Capital Bank's Motion for Summary Judgment (Doc. No. 15) as to all of Boileau's claims. The Clerk of the Court is **DIRECTED** to close the case.

It is so ORDERED.

Entered this 1st day of July, 2015.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT